# 15-527

---

## In the
## United States Court of Appeals
## for the Second Circuit

---

DONNA GARFIELD,
*Plaintiff-Appellant*,

v.

OCWEN LOAN SERVICING, LLC,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Western District of New York

---

## BRIEF FOR THE NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT AND URGING REVERSAL

---

Tara Twomey
NATIONAL ASSOCIATION OF CONSUMER
  BANKRUPTCY ATTORNEYS
1501 The Alameda
San Jose, CA 95126
Tel.: (831) 229-0256

Daniel L. Geyser
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Tel.: (214) 978-4014
Fax: (214) 978-4044
*dgeyser@mckoolsmith.com*

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, counsel for amicus curiae certifies that the National Association of Consumer Bankruptcy Attorneys is a nongovernmental corporate entity; it has no parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICUS CURIAE ........................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................3

ARGUMENT .......................................................................................................7

    I.     UNDER THE SUPREME COURT'S CONTROLLING
          ANALYSIS, THE BANKRUPTCY CODE DOES NOT
          PRECLUDE VIABLE CLAIMS UNDER THE FDCPA ....................7

          A.    There Is No Textual Support For Preclusion Because
                There Was No Clearly Expressed Statement Of
                Preclusion In Either Scheme .......................................................8

          B.    There Is No Conflict (Irreconcilable Or Otherwise)
                Between The FDCPA And The Code Because The
                Challenged Conduct Is Forbidden Under Both Schemes .........10

          C.    Preclusion Is Further Inconsistent With The Purpose And
                History Of Each Law ................................................................22

    II.    EVEN IF SOME THEORETICAL CONFLICT EXISTS,
          THERE IS NO BASIS FOR CATEGORICALLY
          PRECLUDING ALL FDCPA CLAIMS IN THE
          BANKRUPTCY CONTEXT ............................................................27

CONCLUSION ...................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altria Group, Inc.* v. *Good*, 555 U.S. 70 (2008)......................................................20

*Astoria Fed. Sav. Loan Ass'n* v. *Solimino*, 501 U.S. 104 (1991) ...........................19

*Bates* v. *Dow Agrosciences LLC*, 544 U.S. 431 (2005)...........................................14

*Bd. of Supervisors* v. *Lackawana Iron & Coal Co.*, 93 U.S. 619 (1876) ...............23

*B-Real, LLC* v. *Chaussee (In re Chaussee)*, 399 B.R. 225 (B.A.P. 9th Cir. 2008)................................................................................................ 13, 16, 19, 23

*B-Real, LLC* v. *Rogers*, 405 B.R. 428 (M.D. La. 2009) ..........................................21

*Brimmage* v. *Quantum3 Group LLC (In re Brimmage)*, 523 B.R. 134 (Bankr. N.D. Ill. 2015) ........................................................................................28

*Buckley* v. *Bass & Assocs.*, 249 F.3d 678 (7th Cir. 2001) ......................................28

*Carpenter* v. *Ries (In re Carpenter)*, 614 F.3d 930 (8th Cir. 2010) .......................18

*Cohen* v. *de la Cruz*, 523 U.S. 213 (1998).............................................................22

*Conn. Nat'l Bank* v. *Germain*, 503 U.S. 249 (1992) .................................... 6, 17, 19

*Crawford* v. *LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014) ......................14

*Dawson* v. *Wash. Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139 (9th Cir. 2004) ............................................................................................................10

*Dep't of Transp.* v. *Pub. Citizen*, 541 U.S. 752 (2004) ..........................................10

*Duke*, *In re*, 79 F.3d 43 (7th Cir. 1996) ..................................................................27

*English* v. *General Elec. Co.*, 496 U.S. 72 (1990) ..................................................12

*Heintz* v. *Jenkins*, 514 U.S. 291 (1995) ...................................................... 22, 27, 28

*J.E.M. Ag Supply, Inc.* v. *Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124 (2001) ...................................................................................................... *passim*

*Jerman* v. *Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573 (2010) .............................................................................................. 25, 27

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Johnson* v. *Railway Express Agency, Inc.*, 421 U.S. 454 (1975) ................... *passim*

*Kaymark* v. *Bank of Am., N.A.*, 783 F.3d 168 (3d Cir. 2015)...................................17

*Kokoszka* v. *Belford*, 417 U.S. 642 (1974) ............................................................25

*Law* v. *Siegel*, 134 S. Ct. 1188 (2014) ....................................................................1

*McCollough* v. *Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011) ............................................................... 23, 28

*Mertens* v. *Hewitt Assocs.*, 508 U.S. 248 (1993)...................................................24

*Morton* v. *Mancari*, 417 U.S. 535 (1974)....................................................... *passim*

*MSR Exploration* v. *Meridian Oil*, 74 F.3d 910 (9th Cir. 1996) ............... 19, 20, 21

*Nat'l Ass'n of Home Builders* v. *Defenders of Wildlife*, 551 U.S. 644 (2007) ............................................................... 8, 10

*Necci* v. *Universal Fid. Corp.*, 297 B.R. 376 (E.D.N.Y. 2003) .............................17

*POM Wonderful LLV* v. *Coca-Cola Co.*, 134 S. Ct. 2228 (2014).................. *passim*

*Radzanower* v. *Touche Ross & Co.*, 426 U.S. 148 (1976) ......................................18

*Randolph* v. *IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004) .................................. *passim*

*Simmons* v. *Roundup Funding LLC*, 622 F.3d 93 (2d Cir. 2010)................... *passim*

*Simon* v. *FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013) ...................... *passim*

*Turner* v. *J.V.D.B. & Assocs., Inc.*, 330 F.3d 991 (7th Cir. 2003) ...........................9

*U.S. ex rel. Farmers Home Admin.* v. *Nelson*, 969 F.2d 626 (8th Cir. 1992)...............................................................28

*United Student Aid Funds, Inc.* v. *Espinosa*, 559 U.S. 260 (2010) ..........................1

*Wagner* v. *Ocwen Fed. Bank*, No. 99-C-5404, 2000 U.S. Dist. LEXIS 12463 (N.D. Ill. Aug. 28, 2000)........................................................... 9, 29

*Walls* v. *Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002).................... *passim*

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Weber* v. *SECFU (In re Weber)*, 719 F.3d 72 (2d Cir. 2013)....................................1

*Wyeth* v. *Levine*, 555 U.S. 555 (2009) ....................................................26

**Statutes**

11 U.S.C. 105 ....................................................................... 8, 23

11 U.S.C. 524(a)(2) ................................................................. 8, 10

15 U.S.C. 1692 ................................................................... *passim*

15 U.S.C. 1692(a) ......................................................... 5, 10, 12, 25

15 U.S.C. 1692(b) ............................................................. 5, 9, 12

15 U.S.C. 1692(e) ............................................................. 5, 23, 24

15 U.S.C. 1692a(6) ...................................................................5

15 U.S.C. 1692e .......................................................................9

15 U.S.C. 1692e(11) .................................................................29

15 U.S.C. 1692f(1) ...................................................................15

15 U.S.C. 1692g(d) ..................................................................28

15 U.S.C. 1692g(e) ..................................................................4, 9

15 U.S.C. 1692k .................................................................. 9, 18

15 U.S.C. 1692n .....................................................................26

28 U.S.C. 158(a) .....................................................................15

28 U.S.C. 1334(a) ...................................................................15

42 U.S.C. 407(a) .....................................................................18

42 U.S.C. 1981 ......................................................................15

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,
    Pub. L. No. 109-8, 119 Stat. 23 .......................................................25

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Rules**

2d Cir. R. 29.1(b) ...........................................................................................1

Fed. R. App. P. 29(c)(5)................................................................................1

## INTEREST OF AMICUS CURIAE

The National Association of Consumer Bankruptcy Attorneys (NACBA) is a non-profit organization with a membership of approximately 3,000 consumer-bankruptcy attorneys. Incorporated in 1992, NACBA is the only national association of attorneys organized specifically to protect the rights of consumer-bankruptcy debtors—the very class distinctly affected by these proceedings.[1]

As part of its mission, NACBA works to educate the bankruptcy bar and the community at large on the uses and misuses of the consumer-bankruptcy process. NACBA also advocates nationally for consumer debtors on issues that cannot be adequately addressed by its individual members alone. NACBA participates regularly as amicus in significant cases implicating the core rights of consumer-bankruptcy debtors. *E.g.*, *Law* v. *Siegel*, 134 S. Ct. 1188 (2014); *United Student Aid Funds, Inc.* v. *Espinosa*, 559 U.S. 260 (2010); *Weber* v. *SECFU (In re Weber)*, 719 F.3d 72 (2d Cir. 2013).

NACBA has a vital interest in the proper disposition of this case. This appeal presents crucial questions concerning the interaction of the Fair Debt Collec-

---

[1] Pursuant to Fed. R. App. P. 29(c)(5) and this Court's Rule 29.1(b), amicus states that no counsel for any party authored this brief in whole or in part, and that no person or entity, other than amicus and its counsel, contributed money intended to fund the preparation or submission of this brief. Counsel for Garfield has consented to the filing of this brief, but counsel for Ocwen has withheld consent.

tion Practices Act (FDCPA), 15 U.S.C. 1692 *et seq.*, and the Bankruptcy Code. According to the district court, under this Court's precedent, the Bankruptcy Code automatically trumps the FDCPA in any case involving discharged debt: Because "the debtor is already under the protection of the Bankruptcy Court," the FDCPA is "preempted," and the debtor is limited to seeking relief under the Code. JA36 (citing *Simmons* v. *Roundup Funding LLC*, 622 F.3d 93, 96 (2d Cir. 2010)).

The district court was wrong. This issue has sharply divided the courts, and it implicates a direct split between the Seventh and Ninth Circuits. Compare *Randolph* v. *IMBS, Inc.*, 368 F.3d 726, 730-733 (7th Cir. 2004) (refusing to find the FDCPA "repealed by implication"), with *Walls* v. *Wells Fargo Bank, N.A.*, 276 F.3d 502, 510-511 (9th Cir. 2002) (holding the FDCPA claims "precluded"). Had the district court simply applied the Supreme Court's implied-repeal jurisprudence, it would have found that the FDCPA and the Code easily co-exist—neither one trumps the other. But the court read this Court's precedent (*Simmons*) to reject that controlling methodology. The district court's view of *Simmons* leaves this Court directly at odds with the Supreme Court and deepens a split between this Court and other circuits. See, *e.g.*, *Simon* v. *FIA Card Servs., N.A.*, 732 F.3d 259, 273-274 (3d Cir. 2013) ("follow[ing] the Seventh Circuit's approach," and rejecting *Simmons*, to hold that "[t]he proper inquiry * * * is whether the FDCPA claim raises a direct conflict" between the Code and the FDCPA "or whether both can be enforced").

This matter presents an ideal opportunity for this Court to revisit this issue and provide guidance on these important questions. On a proper reading, *Simmons* resolved a narrow dispute based on the debtors' "'careless'" presentation, and it expressly reserved any decision on the "broader" question presented here—whether an "FDCPA action can be based on an act that violates any provision of the Bankruptcy Code." 622 F.3d at 96-97 & n.2. The district court read *Simmons* too expansively, and its holding, if allowed to stand, will effectively eliminate debtors' rights to invoke Congress's fundamental protections in the FDCPA. There are compelling reasons to question the soundness of the court's holding, and NACBA has a critical interest in presenting those substantial questions.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case asks whether conduct that violates the FDCPA is exempt from FDCPA liability because that same conduct also violates the Bankruptcy Code. Under the Supreme Court's "established" analysis (*Randolph*, 368 F.3d at 731), one federal statute will not preclude another in the absence of plain text or "irreconcilable" conflict. *Morton* v. *Mancari*, 417 U.S. 535, 550 (1974). Yet the district court held that the Code could preclude the FDCPA without satisfying that showing. JA36. Its failure to follow the Supreme Court's implied-repeal doctrine was error, and its judgment should be reversed.

3

Contrary to the district court's view, the traditional presumption is that federal statutory schemes, even when "overlapping and not entirely congruent," co-exist and operate in tandem. *Randolph*, 368 F.3d at 731. "'[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *J.E.M. Ag Supply, Inc.* v. *Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143-144 (2001). Yet both the FDCPA and the Code are silent on preclusion. Congress was obviously aware of bankruptcy issues when enacting the FDCPA, and it understood how to carve out statutory schemes from the FDCPA's scope. See, *e.g.*, 15 U.S.C. 1692g(e) (doing exactly that). Congress is also aware of the judicial standard for finding implied repeals, and the implication of withholding "an affirmative showing of an intention to repeal." *Morton*, 417 U.S. at 550. If Congress intended to foreclose the FDCPA in the bankruptcy context, it would have done that.

Because the text is silent on preclusion, there is no basis for brushing aside the FDCPA without an irreconcilable conflict. And there is no "conflict" in this setting: the activity challenged here violates *both* laws. There is no right (under the Code or the FDCPA) to demand payment on discharged debt. It is easy to comply with both statutes because the conduct at issue *violates* both statutes. Nothing compels (or even *permits*) an act under one scheme that violates the other. This is simply a matter of honoring the discharge injunction and refusing to pursue dis-

4

charged debts (which all parties should be doing anyway). The FDCPA thus easily survives the implied-repeal analysis: Where it is possible to enforce both schemes, courts will not find that one precludes the other.

Each scheme further regulates different subjects: "debt collectors" are *not* ordinary creditors, 15 U.S.C. 1692a(6), and Congress had every reason for targeting their activity separately. The Code's general remedies may strike an appropriate balance in most cases, but that balance is not necessarily adequate for professional debt collectors. The risks of misconduct are greater, the prospect of harm is more serious, and the need for deterrence is increased. The FDCPA accordingly supplements the Code's remedies for this subset of actors. See 15 U.S.C. 1692(a)-(b), (e). There is no reason to think that Congress excluded these important protections for bankruptcy-related activity.

While the Ninth Circuit reached the opposite conclusion in *Walls*, its analysis was demonstrably at odds with controlling precedent. *Walls* relied primarily on *preemption* cases, not *preclusion* cases (276 F.3d at 510), and the difference is stark: it takes far less for courts to find *state law* preempted for interfering with a federal scheme. *Simon*, 732 F.3d at 275 (rejecting *Walls* for this reason). But it is a "rare bird indeed" where one *federal* statute precludes another. *Randolph*, 368 F.3d at 730. In that setting, Congress presumptively intends for its laws to operate in tandem, and courts refuse to "pick and choose" between congressional enactments

unless it is impossible to enforce both. *Morton*, 417 U.S. at 551. In this case, there is no such impossibility and the statutes easily co-exist: both prohibit the same core activity, and compliance requires forgoing the same misconduct. This perfect alignment is the very opposite of the requisite "'positive repugnancy.'" *J.E.M.*, 534 U.S. at 143.

Nor is there a "conflict" simply because some debtors may "bypass" the Code's reticulated scheme. *Walls*, 276 F.3d at 510. This is not a genuine "conflict" at all, but the predictable result of Congress providing injured parties a "choice" between overlapping remedies. *Johnson* v. *Railway Express Agency, Inc.*, 421 U.S. 454, 461 (1975). That choice is commonplace in the U.S. Code, and there is no evidence that FDCPA claims—targeting the same conduct the Code already forbids—interferes with the Code's ordinary and intended operation. See, *e.g.*, *J.E.M.*, 534 U.S. at 144.

The legal default is that every federal statute operates according to its terms. "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank* v. *Germain*, 503 U.S. 249, 253-254 (1992). Congress never said that the Code's remedies were "exclusive[]" (contrast *Simmons*, 622 F.3d at 96 n.2), and it necessarily understood (under the implied-repeal standard) that the FDCPA would remain available as an independent remedy for debt-collector misconduct. The deci-

sion to eliminate the FDCPA's superimposed scheme does nothing to advance the Code, but it does frustrate legislative intent. See *Morton*, 417 U.S. at 551.

This Court admittedly has found FDCPA claims precluded in a different context: one where liability was premised on a bankruptcy creditor filing an "inflated" proof of claim. *Simmons*, 622 F.3d at 94. But that issue is readily distinguishable from the issue here (*id.* at 96 n.2); the Court expressly reserved *this* question in that very decision (*ibid.*); the panel's methodology, respectfully, was flawed, as the panel endorsed the same errors infecting *Walls* (*id.* at 96); and the debtors' efforts (according to the panel itself) were inadequate (*id.* at 97), leaving the panel to resolve a difficult, complex question without the full benefit of the adversarial process. Under a traditional, proper analysis, we submit, *Simmons* would have reached a different outcome. While NACBA respectfully submits that neither FDCPA claim (in *Simmons* or *Garfield*) is precluded, this fact-pattern presents a comparatively straightforward case. The district court erred in ruling otherwise, and its judgment should be reversed.

## ARGUMENT

### I. UNDER THE SUPREME COURT'S CONTROLLING ANALYSIS, THE BANKRUPTCY CODE DOES NOT PRECLUDE VIABLE CLAIMS UNDER THE FDCPA

"When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other * * * ." *Randolph*, 368

F.3d at 730. This standard is demanding, and Congress's intent to displace its own law must be "clear and manifest" (*Morton*, 417 U.S. at 551): "Courts should 'not infer a statutory repeal unless the later statute *expressly contradicts* the original act or unless such a construction is *absolutely necessary* in order that the words of the later statute shall have any meaning at all." *Simon*, 732 F.3d at 274 (quoting *Nat'l Ass'n of Home Builders* v. *Defenders of Wildlife*, 551 U.S. 644, 662 (2007)) (emphases added).

Under this controlling standard, there is no preclusion here. Congress did not textually foreclose FDCPA claims, and there is no serious (much less debilitating) conflict between the Code and the FDCPA. These statutory schemes can readily co-exist, and it is "easy to enforce each one." *Randolph*, 368 F.3d at 730. The court below erred in failing to apply this established standard.

## A. There Is No Textual Support For Preclusion Because There Was No Clearly Expressed Statement Of Preclusion In Either Scheme

There is no "clearly expressed legislative decision" that the Code replace the FDCPA in this context. *Randolph*, 368 F.3d at 730. No court examining this question—in any setting—has suggested that Congress textually displaced the FDCPA. There assuredly is no such statement in the Code: it prohibits acts that violate the discharge injunction (11 U.S.C. 524(a)(2)), and enforces that prohibition via the court's general contempt powers (under 11 U.S.C. 105 and inherent judicial au-

8

thority). See, *e.g.*, *Randolph*, 368 F.3d at 728; *Walls*, 276 F.3d at 510. Nowhere does the Code textually declare that general remedy the *exclusive* means for redressing violations of the discharge injunction. See, *e.g.*, *Wagner* v. *Ocwen Fed. Bank*, No. 99-C-5404, 2000 U.S. Dist. LEXIS 12463, at *3-*4 (N.D. Ill. Aug. 28, 2000).

Nor is there any preclusive language in the FDCPA: it likewise prohibits a variety of unlawful collection activities, and provides a statutory right of action for redressing those violations. 15 U.S.C. 1692k; see also *Turner* v. *J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 993 (7th Cir. 2003) (finding discharge-injunction violations actionable under the FDCPA). Nowhere in the FDCPA did Congress suggest that conduct also covered by the Code was exempt from the FDCPA's universal reach. On the contrary, Congress framed the FDCPA's prohibitions with broad language (*e.g.*, "[a] debt collector may not use *any* false, deceptive, or misleading representation or means," 15 U.S.C. 1692e (emphasis added)), and Congress even underscored, expressly, the "inadequa[cy]" of "[e]xisting" remedies for curbing abusive practices (15 U.S.C. 1692(b). That suggests the *opposite* intent of deferring to other schemes to regulate "debt collectors."

Had Congress intended to preclude FDCPA claims premised on bankruptcy-related misconduct, it knew exactly how to do it. The FDCPA itself draws similar exceptions in other places (see, *e.g.*, 15 U.S.C. 1692g(e)), and Congress was well

9

aware of the obvious connection (which it specifically recognized) between abusive debt-collection and "personal bankruptcies" (15 U.S.C. 1692(a)). There is no reason to think that Congress crafted a scheme to protect debtors from abuse, yet immediately withdrew those very protections for debtors most at risk—the vulnerable subset forced into bankruptcy (see, *e.g.*, *Dawson* v. *Wash. Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004)).

Congress acts against the backdrop of settled judicial law, and it is settled that the judiciary will read two statutes to co-exist unless Congress explicitly says otherwise or dual compliance is impossible. See, *e.g.*, *Nat'l Ass'n of Home Builders*, 551 U.S. at 662. Congress was presumptively aware of this standard, and it would have invoked clear text if it wished to set aside the FDCPA in all cases with bankruptcy-related activity. Its silence is conspicuous.

## B. There Is No Conflict (Irreconcilable Or Otherwise) Between The FDCPA And The Code Because The Challenged Conduct Is Forbidden Under Both Schemes

1. In the absence of irreconcilable conflict, the FDCPA applies simultaneously with the Code. Ocwen cannot establish the necessary conflict: A debt collector "can easily satisfy both mandates" (*Dep't of Transp.* v. *Pub. Citizen*, 541 U.S. 752, 767 (2004)), because the challenged conduct is forbidden under both schemes.

A debt discharged in bankruptcy is not the proper subject of *any* collection efforts. 11 U.S.C. 524(a)(2). The claims at issue arose because the debt collector

10

(in a variety of ways) sought to collect discharged debt, an act simultaneously violating the Code and the FDCPA. No one is compelled to do anything under the Code that is forbidden under the FDCPA; indeed, the challenged conduct is not even *permitted* under the Code. Any debt collector who honors the mandatory discharge injunction will automatically comply with the FDCPA's every obligation. Debt collectors can avoid liability—under *both* schemes—by simply not violating the law.[2]

2. In reaching the opposite conclusion, *Walls* instead asked whether Congress *indicated* an intent for both laws to apply: "Nothing in either Act persuades us that Congress intended to allow debtors to bypass the Code's remedial scheme when it enacted the FDCPA." 276 F.3d at 510. This flips the correct standard on its head. The question is not whether Congress explicitly *endorsed* both schemes but whether Congress explicitly *precluded* one in favor of the other. Unless the Code textually prohibited FDCPA claims in this context, there was no basis for *Walls* to preclude those claims without a manifest showing of irreconcilable conflict. The

---

[2] The district court, however, found a "conflict" because the FDCPA *contemplates* collection while the Code *forbids* collection. JA37 ("a debt collector cannot comply with the discharge injunction, which prohibits action to collect on a discharged debt, and comply with the provisions of the FDCPA, which presume action by a debt collector to collect on a debt"). This logic is perplexing: the FDCPA never *forces* anyone to collect any debt, much less an *unlawful* debt. It simply regulates debt collectors once they voluntarily decide to act. The FDCPA's prohibitions will be satisfied immediately by anyone refraining from activity that violates the Code.

Ninth Circuit, however, never even asked whether the two schemes *could* operate together; it simply found that the Code's framework was "'complex, detailed, and comprehensive'" (*ibid.*)—a point that says nothing about whether another law could operate in tandem with that detailed scheme. See, *e.g.*, *Johnson*, 421 U.S. at 459 ("Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief."); cf. *English* v. *General Elec. Co.*, 496 U.S. 72, 87 (1990) ("the mere existence of a federal regulatory or enforcement scheme," even a "detailed" one, "does not by itself imply pre-emption of state remedies").[3]

Federal laws operate in accordance with their plain text, and "[o]verlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both." *Randolph*, 368 F.3d at 731. The FDCPA comfortably reaches the conduct at issue. It was not necessary for Congress to indicate that the FDCPA would "'overlay'" the Code's protections (contra *Simmons*,

---

[3] Even on its own terms, *Walls* answered this question incorrectly. It was an express purpose of the FDCPA to supplement other remedies: Congress detailed the harms imposed by professional debt collectors (15 U.S.C. 1692(a)), and it declared existing remedies "inadequate" to curb those harms (15 U.S.C. 1692(b)). This statement alone contradicts the notion that Congress silently intended to restrict the FDCPA's natural scope.

622 F.3d at 96), because the FDCPA would already do exactly that under the controlling standard.

3. While not mustering a *true* conflict, some courts have declared that the FDCPA would wrongly interfere with the Code's operation. *Walls*, 276 F.3d at 510. Because the Code provides a fully reticulated system, any attempt to superimpose the FDCPA's remedies would frustrate Congress's design. In short, it is unnecessary, and counterproductive, to supplement the Code's remedies. See, *e.g.*, *B-Real, LLC* v. *Chaussee (In re Chaussee)*, 399 B.R. 225, 236-237, 240 (B.A.P. 9th Cir. 2008).

This analysis fails in multiple respects. The first is that it impermissibly waters down the implied-repeal standard. It is well settled that "overlapping and not entirely congruent remedial systems can coexist," and "[t]his is so even if the application of one system is jarring against the background of another." *Randolph*, 368 F.3d at 731. The "remedies available" under each scheme, "although related, and although directed to most of the same ends, are separate, distinct, and independent." *Johnson*, 421 U.S. at 459. The fact that one scheme may be comprehensive and detailed means little in the absence of irreconcilable conflict: unless it is impossible for the statutes to operate together, courts apply the strong presumption against implied repeal. See *J.E.M.*, 534 U.S. at 144 ("Here we can plainly regard each statute as effective because of its different requirements and protections.").

13

Nor is it even true that the FDCPA would upset the Code's "balance" between "the interests of debtors and creditors." *Walls*, 276 F.3d at 510. Simply put, not all creditors are the same. The FDCPA reflects a clear legislative determination that "debt collectors" are different from ordinary creditors, and different rights and remedies are necessary to counteract abusive debt-collection practices. *Crawford* v. *LVNV Funding, LLC*, 758 F.3d 1254, 1258 n.3 (11th Cir. 2014). No rule or requirement under the Code is "negated" by punishing a debt collector for independently violating the FDCPA. See *Randolph*, 368 F.3d at 732-733 ("[p]ermitting remedies for negligent falsehoods would not contradict any portion of the Bankruptcy Code"). The Code's "balance" for *ordinary* creditors—without any specific treatment for professional "debt collectors"—is reinforced, not disturbed, by the FDCPA's application: "[i]t would be better to recognize that the statutes overlap, each with coverage that the other lacks." *Id.* at 731; see also *POM Wonderful LLV* v. *Coca-Cola Co.*, 134 S. Ct. 2228, 2238 (2014) (refusing preclusion where "two statutes complement each other"); cf. *Bates* v. *Dow Agrosciences LLC*, 544 U.S. 431, 450 (2005) ("Private remedies that enforce federal misbranding requirements would seem to aid, rather than hinder, the functioning of FIFRA.").

*Walls* expressed concern about forcing courts to make "bankruptcy-laded determinations" to resolve FDCPA claims. 276 F.3d at 510. But there is no reason that bankruptcy issues are uniquely difficult for district courts to handle. See, *e.g.*,

14

28 U.S.C. 1334(a) (assigning district courts "original" jurisdiction); 28 U.S.C. 158(a) (granting district courts jurisdiction to hear bankruptcy appeals). If Congress felt that bankruptcy issues (or any other issues) were somehow too cumbersome or complex, it could have exempted those issues from the FDCPA. But courts are presumptively capable of resolving those issues, and there is nothing in the statutory text forbidding those determinations.

*Walls*'s concern is further inconsistent with the statutory structure. The FDCPA has no exhaustion requirement. It does not insist that parties first enforce underlying rights in other forums before asserting FDCPA claims for those violations. On the contrary, Congress, for example, specifically contemplated that parties would assert claims based on conduct not "permitted by law" (15 U.S.C. 1692f(1))—without any limitation on what "law" that might be. It knew courts would have to consult separate legal doctrine to determine those FDCPA claims. Yet there is no indication that Congress foreclosed the FDCPA in any jurisprudential field—or demanded that litigants exhaust remedies elsewhere before resorting to the FDCPA. The Ninth Circuit erred in grafting an artificial limitation onto the FDCPA. Cf., *e.g.*, *Johnson*, 421 U.S. at 461 (in concluding that both schemes co-exist, finding that "Congress did not expect that a § 1981 court action usually would be resorted to only upon completion of Title VII procedures and the Com-

15

mission's efforts to obtain voluntary compliance," despite the fact that pursuing one scheme might hobble the other).

4. *Walls* likewise perceived a "conflict" because it declared the Code's remedial scheme *exclusive*—effectively occupying the field—and thus enforcing the FDCPA would "circumvent" the Code. 276 F.3d at 510; see also *In re Chaussee*, 399 B.R. at 236-237. This contention is entirely question-begging: it is *not* true that the Code's remedies are "exclusive" if Congress understood that the FDCPA would operate in the background *as an additional check* for professional "debt collectors." Congress would have been aware that these statutes, by default, co-exist. There was no need to reference the FDCPA in the Code, because the FDCPA retains force under the implied-repeal standard. And there was no need to reiterate the FDCPA's remedies in the Code: those remedies already exist independently in the FDCPA itself. The inexorable consequence of the implied-repeal default is that the Code's remedies do *not* occupy the field.[4]

---

[4] Even if courts are "convinced" that the Code is "up to the task" of redressing violations in bankruptcy (*In re Chaussee*, 399 B.R. at 241), that is ultimately a policy determination for the political branches. Some courts may believe that the Code's remedies are sufficient, but Congress made a contrary determination in the FDCPA. It explained that other remedies are inadequate, and it imposed a broad set of prohibitions without any textual limitation for bankruptcy-related misconduct. Courts are not "at liberty to pick and choose among congressional enactments" when federal statutes overlap. *Morton*, 417 U.S. at 551. If Congress wishes to displace the FDCPA in any given setting, it must clearly express that determination in

[Footnote continued on next page]

16

Overlapping coverage is not a valid basis for refusing to apply an independent federal statute. *J.E.M.*, 534 U.S. at 141-144. Congress often provides a choice of remedies across different statutory schemes. This avoids gaps in enforcement and permits Congress to calibrate remedies in each scheme for different actors. *POM Wonderful*, 134 S. Ct. at 2239 (invoking "synergies among multiple methods of regulation"); *Conn. Nat'l Bank*, 503 U.S. at 253. What may be sufficient under the Code to punish ordinary creditors may not be sufficient to regulate debt collectors. The FDCPA permits Congress to target those different actors, and the unique harms they pose, with a scheme calibrated specifically for those actors. See *Randolph*, 368 F.3d at 732-733. The two schemes are not in "conflict" simply because some litigants elect to pursue one set of remedies over the other. *Johnson*, 421 U.S. at 461 ("these are the natural effects of the choice Congress has made available").[5]

---

[Footnote continued from previous page]

the statutory text. See *Kaymark* v. *Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015) (rejecting preclusion and noting "the prudence of maintaining parallel FDCPA claims is not ours to decide").

[5] Contrary to some courts' contentions, the FDCPA's availability does not render the Code "superfluous." *Necci* v. *Universal Fid. Corp.*, 297 B.R. 376, 381 (E.D.N.Y. 2003). The Code remains available for all debtors, and some debtors may prefer the Code to the FDCPA's independent remedies. See, *e.g.*, *Randolph*, 368 F.3d at 730-731 (explaining the Code's advantages in certain circumstances). And the Code is the only option where an *ordinary* creditor (as opposed to a "debt collector") violates the discharge injunction. *Ibid.* These FDCPA claims will thus "have no impact whatever upon the vast majority of lawsuits brought under [the

[Footnote continued on next page]

5. *Walls* reasoned that permitting an FDCPA claim for discharge violations would "allow through the back door what [debtors] cannot accomplish through the front door—a private right of action." 276 F.3d at 510.

This concern is misplaced. There is no need to identify any such authority under the Code because the action is expressly authorized under the FDCPA. 15 U.S.C. 1692k. If Congress wished to limit the FDCPA's scope, it would have said so. It was aware of the obvious connection between debt collection and bankruptcy, and it would have exempted from the FDCPA activity related to pending bankruptcy proceedings. Compare, *e.g.*, *Carpenter* v. *Ries (In re Carpenter)*, 614 F.3d 930, 932 (8th Cir. 2010) (discussing 42 U.S.C. 407(a) and its express preclusion of "the operation of any bankruptcy or insolvency law"). Congress instead spoke expansively: it authorized, without limitation, FDCPA actions where debt collectors engage in conduct that exactly describes the conduct here. There is no need for courts to "imply" anything in order to recognize this independent statutory authority.

The more salient concern is reading Congress's express statutory action in the FDCPA out of existence. "'It would be dangerous in the extreme to infer

---

[Footnote continued from previous page]

Code]." *Radzanower* v. *Touche Ross & Co.*, 426 U.S. 148, 156 (1976). The Code does not become "superfluous" merely because it may not be invoked in every situation it otherwise reaches.

* * * that a case for which the words of an instrument expressly provide, shall be exempted from its operation.'" *Conn. Nat'l Bank*, 503 U.S. at 254. Courts are no more permitted to negate express statutory rights than courts may invent rights that plainly do not exist. The high threshold for establishing implied repeals is designed in part to avoid exactly this kind of judicial interference with legislative judgments. *Astoria Fed. Sav. Loan Ass'n* v. *Solimino*, 501 U.S. 104, 109 (1991).

6. *Walls* again erred by effectively applying the standard for preempting *state* law, rather than the strict standard for precluding a co-equal *federal* statute. 276 F.3d at 510 (invoking *MSR Exploration* v. *Meridian Oil*, 74 F.3d 910 (9th Cir. 1996), a *preemption* case); see also *In re Chaussee*, 399 B.R. at 236 (acknowledging that *Walls*'s "rationale" was "based in large part" on *MSR Exploration*). Rather than searching for irreconcilability, *Walls* instead asked whether additional remedies were "necessary" or would frustrate the Code's comprehensive regime. This methodology conflicts with controlling law. See, *e.g.*, *Simon*, 732 F.3d at 275 (rejecting "the Ninth Circuit's reliance on a precedent involving federal statutory preemption of a state-law claim to decide whether a federal statute precludes a federal-law claim").

Preemption cases are not preclusion cases. See *POM Wonderful*, 134 S. Ct. at 2236. "Preemption is more readily inferred, so [preemption] decisions * * * are not informative about which federal laws apply to what transactions." *Randolph*,

368 F.3d at 730. Preemption is governed by a different standard, and its lower threshold often implicates considerations that are not even relevant in this context—such as maintaining national uniformity and federal control over some substantive area. See, *e.g*., *POM Wonderful*, 134 S. Ct. at 2236.

Preclusion cases, by contrast, do not implicate those concerns. When the question is whether one *federal* statute precludes another *federal* statute, national uniformity is a given: in each situation, the standard will be federal in nature, and all courts (federal and state alike) will be bound by that "single, uniform standard." See *Altria Group, Inc.* v. *Good*, 555 U.S. 70, 79-80 (2008) (internal quotation marks omitted); compare *MSR Exploration*, 74 F.3d at 914-915 (discussing the need for *federal* uniformity in the bankruptcy context). Congress also automatically retains full legislative control over the substantive area: there is no concern about patchwork regulation or private entities struggling to operate under 50 different regulatory regimes. There is a *single* regime: the overlapping framework—all under federal law—of the Code and the FDCPA. Compare *MSR Exploration*, 74 F.3d at 914 (explaining that the Code's "complex, detailed, and comprehensive provisions" reflect "Congress's intent to create a whole system under *federal* control," not *state* control) (emphasis added). If any aspect of that distinct federal regulation proves inadequate or inefficient, Congress itself can amend the Code or the FDCPA without worrying about varying state legislation.

*MSR Exploration* turned on factors irrelevant in this context, and *Walls* erred in its heavy reliance on that decision. There is no concern of frustrating a uniform federal standard because the FDCPA is a uniform federal law. There is a reason that preclusion is a "rare bird indeed" (*Randolph*, 368 F.3d at 730), and its conditions are unmet in this context.

7. Nothing in *Simmons* requires reading the Code to preclude these FDCPA claims. *Simmons* explicitly reserved this issue (622 F.3d at 96 n.2), and the question it resolved—the proper treatment of an "inflated" proof of claim (*id.* at 94)—is readily distinguishable: a formal filing in bankruptcy court (*Simmons*) is not the same as an out-of-court communication, targeting a debtor, without any direct judicial supervision (as here). See *B-Real, LLC* v. *Rogers*, 405 B.R. 428, 432 n.22 (M.D. La. 2009) (recognizing an analogous distinction). Moreover, as the district court recognized, *Simmons*, like *Walls*, failed to apply the Supreme Court's governing standard. JA35-JA36 (explaining that "the Seventh and Third Circuits" search for "an irreconcilable conflict," as the Supreme Court requires, but "the Second Circuit has not adopted th[is] approach"). The opinion was truncated (four pages total) and based on the debtors' efforts that (according to the panel) were "'careless.'" 622 F.3d at 97. The district court read *Simmons* to decide more than it did, based on a sweeping rationale that *Simmons* did not embrace, but reserved for

future review. *Simmons* is not binding here, and there is no reason to extend its rationale to this new context or invite further tension with Supreme Court doctrine.[6]

### C. Preclusion Is Further Inconsistent With The Purpose And History Of Each Law

1. a. The Code's and the FDCPA's overlapping remedial schemes advance the purpose of each law: each law targets a different audience, and Congress would have necessarily intended both laws to apply in tandem.

The FDCPA targets "debt collectors" (not ordinary creditors), and prohibits its own set of misconduct. See, *e.g.*, *Randolph*, 368 F.3d at 730-732 (recognizing multiple differences in the FDCPA, including its exclusive prohibition of "negligent falsehoods"). Its primary focus is not the fair distribution of estate assets, but protecting debtors from abuse. See *Heintz* v. *Jenkins*, 514 U.S. 291, 292 (1995). The Code, by contrast, does not consider the "full scope of the interests the

---

[6] NACBA respectfully submits that the FDCPA is not even precluded in the context of "invalid" proofs of claim, especially in the context of time-barred claims. Congress nowhere indicated that debt collectors are immune from FDCPA liability when they lodge a claim in bankruptcy court that would indisputably give rise to FDCPA liability in non-bankruptcy litigation. Debt collectors are prohibited from filing proofs of claim without a good-faith basis, and they have no such basis for deliberately filing a *stale* claim: the Supreme Court has defined a "claim" as a legally "'enforceable'" right, and time-barred claims are not *legally* enforceable. *Cohen* v. *de la Cruz*, 523 U.S. 213, 218 (1998). The FDCPA thus only prohibits what the Code does not even allow, and its application would not undermine the Code, but promote it. While this case is not a proper vehicle for deciding this issue, NACBA raises it now so the Court's review may consider a broader range of situations where these statutory schemes interact.

[FDCPA] protects" (*POM Wonderful*, 134 S. Ct. at 2241)—including the FDCPA's broad consumer safeguards and its leveling of the playing field for honest debt collectors (15 U.S.C. 1692(e)). It relies upon general contempt authority to redress misconduct of all creditors, without any specific directives for professional collectors. See, *e.g.*, *In re Chaussee*, 399 B.R. at 235-236.

There is no indication that Congress left to the Code the task of curtailing debt collectors' abusive practices. The Code's remedies under 11 U.S.C. 105, or a bankruptcy court's supervision, are not perfect substitutes for the FDCPA. See *Simon*, 732 F.3d at 277; *McCollough* v. *Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 951 (9th Cir. 2011). The Code has no detailed disclosure requirements, and it lacks a comprehensive prohibition of false, misleading, unfair, deceptive, and unconscionable practices. Each scheme applies in different ways to the challenged conduct. *Randolph*, 368 F.3d at 730-731; see also *J.E.M.*, 534 U.S. at 144 (finding no preclusion where each law "reaches some distinct cases"); *Bd. of Supervisors* v. *Lackawana Iron & Coal Co.*, 93 U.S. 619, 623 (1876) (no incompatibility where the statutes' "scope and purposes are distinct and different").

The FDCPA's safeguards are just as essential in the bankruptcy context as any other. The Code leaves consumers exposed to direct contact by professional debt collectors in a way that the FDCPA does not. The fact that a debt collector has

23

already violated the discharge injunction does not somehow make the debtor *less* vulnerable to abuse.

b. Contrary to *Walls*'s contention, the FDCPA's purpose is not limited to "avoid[ing] bankruptcy." 276 F.3d at 510. Congress articulated the statutory purpose directly in the Act itself, and it extends broadly to preventing abusive practices everywhere. Congress even considered the specific need to level the playing field between all debt collectors, so that upright professionals would not suffer a competitive disadvantage by "refrain[ing]" from abusive practices. 15 U.S.C. 1692(e). There is no reason Congress would have tolerated a "competitive disadvantage" solely in bankruptcy-related activities. Nowhere, in short, did Congress hint that the FDCPA's sweeping protections vanish once a consumer declares bankruptcy.

In any event, the perceived "policy" of a statute does not limit its textual application. The FDCPA broadly addressed a host of violations and authorized categorical relief for those violations. The conduct at issue fits comfortably within multiple provisions of the FDCPA's scheme. That unambiguous text cannot be limited by a judicial declaration of Congress's "policy": "vague notions of a statute's 'basic purpose' are * * * inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Mertens* v. *Hewitt Assocs.*, 508 U.S. 248, 261 (1993).

Congress was distinctly aware of the connection between abusive debt-collection practices and bankruptcy, featuring it in the FDCPA's statement of purpose. See 15 U.S.C. 1692(a) (including "bankruptc[y]" in the very first subsection of the FDCPA's first section). The issue was obviously at the forefront of Congress's mind. Had it intended to exempt bankruptcy-related violations from the FDCPA's scope, this is not how Congress would have done it.[7]

2. These schemes' parallel history reinforces that Congress never intended the Code to preclude the FDCPA. See *POM Wonderful*, 134 S. Ct. at 2237. These two schemes have now coexisted for nearly four decades. Congress substantially reworked the Bankruptcy Code in 2005 (see Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23), and it has amended the FDCPA on multiple occasions (see, *e.g.*, *Jerman* v. *Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 604 n.22 (2010) ("[t]he FDCPA has been amended some eight times since its enactment in 1977")). Yet Congress has never cut back the FDCPA's natural reach where challenged conduct concerns

---

[7] The Court further erred in its reliance on *Kokoszka* v. *Belford*, 417 U.S. 642 (1974), a case definitively rejected as irrelevant by other circuits. As those courts explained, the Supreme Court's statements were "at minimum dicta," and at most a "gloss" on a separate issue entirely. *Simon*, 732 F.3d at 278 (describing the "garnishment provisions" in *Kokoszka*). Under the FDCPA, the question is "how debt collectors interact with debtors," not "what assets are made available" in bankruptcy. *Randolph*, 368 F.3d at 731 (likewise distinguishing *Kokoszka*). The concerns animating the FDCPA apply with full force in this context.

25

bankruptcy. "If Congress thought [FDCPA] suits posed an obstacle to its objectives, it surely would have enacted an express pre[clusion] provision at some point during the [Code]'s" long history. *Wyeth* v. *Levine*, 555 U.S. 555, 574 (2009); see also *POM Wonderful*, 134 S. Ct. at 2237. It had ample opportunity to draw a line between the two laws if it so wished. Contrast 15 U.S.C. 1692n (expressly outlining the FDCPA's "[r]elation to State laws," including the scope of preemption).

\*      \*      \*

In short, it makes little sense that Congress would have targeted a unique subset of creditors, imposed independent restrictions on that group's conduct, recognized the obvious connection between debt collection and bankruptcy, declared that the FDCPA exists to supplement "inadequate" remedies—and then presumed that courts would silently read the FDCPA out of existence whenever an FDCPA violation somehow relates to bankruptcy. The far more likely scenario is the same scenario compelled by the controlling standard: in the absence of express preclusion or irreconcilable conflict, both schemes operate together to address a common harm. The FDCPA is not precluded, and the district court erred in holding otherwise.

## II. EVEN IF SOME THEORETICAL CONFLICT EXISTS, THERE IS NO BASIS FOR CATEGORICALLY PRECLUDING ALL FDCPA CLAIMS IN THE BANKRUPTCY CONTEXT

Even if the Code and the FDCPA conflict in some small way, there is still no basis for categorically precluding all FDCPA claims in the bankruptcy context.

1. Any alleged "conflict" between the two schemes is more imaginary than real. The district court's primary concern was apparently how a debt collector would operate *after* violating the discharge injunction. See, *e.g.*, JA38 (asking how Ocwen would convey the FDCPA's "mini-*Miranda* warning" while attempting "to collect a discharged debt"). The simple answer: the two schemes co-exist peaceful-ly if one *refrains from breaking the law in the first place*. Once a party engages in impermissible conduct, it is hard to complain that the FDCPA makes it even more difficult to violate the Code.

In any event, some courts, like the district court here, overstate the challenge of complying with both schemes. It is fairly easy to construe these provisions to avoid any tension, if necessary. See, *e.g.*, *Jerman*, 559 U.S. at 600 (the FDCPA's "provisions should not be assumed to compel absurd results"); *Heintz*, 514 U.S. at 296 (alleged "'anomalies' * * * depend for their persuasive force upon readings that courts seem unlikely to endorse"). For example, not every "contact" is a viola-tion of the discharge injunction. See *In re Duke*, 79 F.3d 43, 45-46 (7th Cir. 1996); *U.S. ex rel. Farmers Home Admin.* v. *Nelson*, 969 F.2d 626, 630-631 (8th Cir.

1992). And not every "communication" automatically mandates a full set of FDCPA disclosures. See 15 U.S.C. 1692g(d) ("A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)."); *Brimmage* v. *Quantum3 Group LLC (In re Brimmage)*, 523 B.R. 134, 141-142 (Bankr. N.D. Ill. 2015) ("[t]he filing of a proof of claim is specifically exempt by § 1692g(d) of the FDCPA from the validation letter requirement"). It is also possible to accommodate any tension with sensible practices: one might, for example, combine FDCPA disclosures with initial communications to the debtor. See *In re Brimmage*, 523 B.R. at 142 ("The Defendants provide no explanation as to why they are unable to provide the specified information when they file a proof of claim, participate in the § 341 meeting, object to plan confirmation or pursue motions for relief from stay."). Under a fair construction of each law, and a fair understanding of each event, virtually any theoretical "conflict" disappears. See, *e.g.*, *Buckley* v. *Bass & Assocs.*, 249 F.3d 678, 680-681 (7th Cir. 2001).

If all else fails, the answer is still not to void the entire FDCPA. Rather, the answer is to displace those narrow provisions that *do* pose unavoidable conflicts. See *McCollough*, 637 F.3d at 952 (explaining *Heintz* as "allowing for the possibility that the FDCPA may contain some 'additional, implicit, exception[s]' to ac-

28

count for the potential conflicts that may arise"). The district court should have resolved any issues with a scalpel, not a sledgehammer. *Heintz*, 514 U.S. at 296.

2. Even under the district court's view, only "many"—not *all*—of Garfield's FDCPA claims "conflict" with the Code. JA36. Garfield, for example, alleges that Ocwen failed to disclose its status as a debt collector attempting to collect a debt. JA7, JA37 (invoking 15 U.S.C. 1692e(11)). This has nothing to do with the Code, as it was pure happenstance that this particular debt was discharged in bankruptcy. The same failure under 15 U.S.C. 1692e(11) would violate the FDCPA in pursuing any other debt. See *Wagner*, 2000 U.S. Dist. LEXIS 12463, at *7. Because the method of collection is not regulated directly by the Code, there is no obvious reason to exclude this activity from the FDCPA. At a minimum, those claims—and others like it—should not be precluded.

## CONCLUSION

The Court should reverse the district court's judgment and hold that the Code does not preclude the FDCPA.

29

Respectfully submitted.

/s/ *Daniel L. Geyser*

Tara Twomey

NATIONAL ASSOCIATION OF CONSUMER

  BANKRUPTCY ATTORNEYS

1501 The Alameda

San Jose, CA 95126

Tel.: (831) 229-0256

Daniel L. Geyser

MCKOOL SMITH, P.C.

300 Crescent Court, Suite 1500

Dallas, TX 75201

Tel.: (214) 978-4014

Fax: (214) 978-4044

*dgeyser@mckoolsmith.com*

*Counsel for Amicus Curiae the National Association of Consumer Bankruptcy Attorneys*

June 13, 2015

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS**

1.    This brief complies with the type-volume limitation of Fed. R. App. P.

29(d) and 32(a)(7)(B) because it contains 6,998 words, as determined by the word-

count function of Microsoft Word 2010, excluding the parts of the brief exempted

by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it

has been prepared in a proportionally spaced typeface using Microsoft Word 2010

in 14-point Times New Roman font.

/s/ *Daniel L. Geyser*
Daniel L. Geyser
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, TX  75201
Tel.:  (214) 978-4014
Fax:  (214) 978-4044
*dgeyser@mckoolsmith.com*

*Counsel for Amicus Curiae*

June 13, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2015, an electronic copy of the foregoing Amicus Brief was filed with the Clerk of Court for the U.S. Court of Appeals for the Second Circuit, using the appellate CM/ECF system. I further certify that all parties in the case are represented by lead counsel who are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Daniel L. Geyser*

Daniel L. Geyser
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Tel.: (214) 978-4014
Fax: (214) 978-4044
*dgeyser@mckoolsmith.com*

June 13, 2015